**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

ROSEMARIE RAMOS RIOS,

        Plaintiff,

    v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

_____

Case No.  1:14-cv-01432-SKO

**ORDER ON PLAINTIFF'S COMPLAINT**

(Doc. 1)

## I.   INTRODUCTION

Plaintiff, Rosemarie Ramos Rios ("Plaintiff"), seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Disability Insurance ("DIB") and Supplemental Security Income ("SSI") benefits pursuant to Titles II and XVI of the Social Security Act.  42 U.S.C. §§ 405(g) and 1383(c)(3).  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1]   The parties consented to the jurisdiction of a U.S. Magistrate Judge.  (Docs. 7; 8.)

## II.   FACTUAL BACKGROUND

Plaintiff was born on May 7, 1960, and alleges disability beginning on March 27, 2011. (Administrative Record ("AR") 13; 25; 203.)  Plaintiff claims she is disabled due to vision loss in the left eye, hearing loss, hypertension, and gout.  (*See* AR 41; 207.)

**A.   Relevant Medical Evidence[2]**

**1.   Community Medical Center**

Plaintiff was seen at Community Medical Center on May 16, 2011 for her glaucoma, and was diagnosed with primary open-angle glaucoma and diabetic retinopathy.  (AR 268.)  A July 2011, computerized axial tomography ("CT") scan revealed a distended gallbladder, soft disuse density nodule projecting from the upper pole region of the right kidney, and no evidence of renal stone disease or renal outlet obstruction.  (AR 255-56.)  An abdominal ultrasound taken the same day suggested acute cholecystitis.  (AR 257.)  Plaintiff was also seen at Community Medical Center for laparoscopic cholecystectomy, skin tag removal, follow-up care, and a history of hypertension, glaucoma, and hyperlipidemia were noted.  (AR 246-54; 260-67; 274-77; 293-96; 349-55.)

On January 25, 2012, Plaintiff was admitted for ongoing left foot pain at the third metatarsal.  (AR 297-301.)  Lateral and oblique radiological imaging revealed no acute fracture or dislocation and alignment within normal limits.  (AR 300.)  Plaintiff was readmitted on February 21, 2012, for recurrent left foot pain in her great toe.  (AR 302.)  Plaintiff reported episodic pain recurring once every few months, with associated limited range of motion and stiffness but no numbness, and reported that she "has tried nothing for the symptoms." (AR 302-08.)  At a follow-up on May 1, 2012, Dr. Roger B. Mortimer, M.D., noted that she was "seen in [emergency department] for pain[ful] toe, different from the 3rd toe for which she was seen here [in January 2012]. Told she had gout. Pain all gone now." (AR 312.)  On July 9, 2012, Plaintiff was seen for a puncture wound of the left foot, after stepping on a nail while wearing shoes.  (AR 338-41.)  An

---

[2]   As Plaintiff's assertion of error is limited to the ALJ's consideration of her subjective symptom testimony, there is no challenge to the ALJ's consideration of the medical evidence and only evidence relevant to this single argument is set forth below.

x-ray of the left foot revealed no fracture or dislocation, no radiopaque foreign body, and no subcutaneous emphysema.  (AR 343.)

### 2.    Dr. Rios, Internal Medicine Examination

On September 7, 2011, Plaintiff was seen by Dr. Romas Rios, M.D., for an internal medicine evaluation.  (AR 278-81.)  Plaintiff complained of glaucoma and difficulty hearing in her right ear.  (AR 278.)  Plaintiff had total vision loss on the left side, had not undergone any surgery, and continued to use eyedrops.  (AR 278.)  Though Plaintiff is able to drive a vehicle and is independent with her activities of daily living, she reported having "some difficulty with driving at nighttime" due to her monocular vision.  (AR 278.)  She also reported headaches that were "left-sided in presentation, and retro orbital in location."  (AR 278.)  Plaintiff was fitted with a hearing aid in the past, but lost it at some point.  (AR 278.)  She did not describe any tinnitus or vertigo. (AR 278.)

Plaintiff appeared well-developed and fairly-nourished, and was able to move about the examination office without any significant visual impairment.  (AR 279.)  She was able to converse verbally, though Dr. Rios had to raise the volume of his voice.  (AR 279.)  On examination, her right eye pupil was "round and reactive to light and accommodation" but her left pupil revealed no light reflex and the left eye was "slightly injected."  (AR 279.)  Dr. Rios opined that Plaintiff's "overall hearing ability was sufficient without any use of hearing aid" and though "[e]xamination of the left eye also revealed loss of vision . . . she remains fairly compensated with the right eye."  (AR 280.)

Dr. Rios opined that Plaintiff could stand, walk, and sit a maximum of six hours, lift 50 pounds occasionally and 25 pounds frequently, had no postural limitations and no manipulative limitations, but should be precluded from working at heights due to her monocular vision and from working around excessive noise due to her already-compromised hearing on the right ear. (AR 281.)

### 3.    Ophthalmological/Optometric Examinations

On October 27, 2011, Plaintiff was examined by Dr. David B. Kaye, M.D. (AR 284-85), and on November 22, 2011, Plaintiff was examined by Dr. Gary M. Waters, M.D. (AR 286-90).

During these examinations, Plaintiff's limitations in her field of vision appeared consistent with the pathology of her vision impairment.  (*See* AR 289.)

### 4.  Agency Consultative Examinations

On December 1, 2011, Dr. J. Frankel, M.D., examined the medical record and determined that Plaintiff's medically determinable impairments were not severe.  (AR 46-59; 70.)  Dr. Frankel further determined that there was insufficient evidence of glaucoma in the record to take the impairment "seriously."  (AR 47.)  On June 6, 2012, Dr. C. De la Rosa, M.D., confirmed Dr. Frankel's findings on reconsideration, and determined that while the evidence indicated that Plaintiff "has some limitations in the performance of certain work activities . . . these limitations would not prevent [her] from performing past relevant work" as a child care provider.  (AR 81-99; 107.)

## B.  Testimony

### 1.  Plaintiff's Self-Assessment

In a May 23, 2012, Exertion Questionnaire, Plaintiff stated that she suffers from dizziness and her "head hurts a lot from the movement of things and people."  (AR 229.)  She stated that she stopped taking care of children due to her vision problems and headaches, and she stays indoors "because of the light."  (AR 229.)  She is able to climb stairs, wash dishes, wash clothes, sweep, mop, do her own grocery shopping, and is able to carry things without getting tired.  (AR 230.)  She is able to drive, but does not drive at night or on freeways.  (AR 230.)  She does not have difficulty completing her housework or other chores and there is no difference in the way she does chores as a result of her impairments.  (AR 231.)  Plaintiff takes naps twice a day due to her headaches, does not take medication for her vision, and does not "work as much as I did before I went blind from that eye."  (AR 231.)

### 2.  Hearing Testimony

#### a.  Plaintiff's Testimony at Hearing

On January 3, 2013, Plaintiff testified she was unmarried but lived with her boyfriend, had three adult daughters, received food stamps and General Relief, and had completed the seventh grade.  (AR 26-27.)  Plaintiff has a driver's license and is able to drive.  (AR 26.)  She is able to

take care of her personal needs, and does not need help with showering or dressing. (AR 27.) She cooks, goes shopping, and visits family. (AR 27-28.) Plaintiff testified that she does not go outdoors "much" because sunlight bothers her eye, so she stays home and watches television. (AR 28.)

Plaintiff stated that she is blind in her left eye and that while she does not have problems with her right eye, "it just works harder" as a result of her loss of vision in the left eye. (AR 30.) The right eye is sensitive to sun, and sunglasses do not help with the sensitivity. (AR 30.) Plaintiff stated that she "get[s] really bad headaches" twice a month that last for "hours" and that she uses eyedrops to help with the sensitivity. (AR 30-31; 36.) Plaintiff stated that she has trouble reading and seeing items that are close, but noted that when she wears her reading glasses she does not have any difficulties. (AR 33-34.) She has tripped as a result of her vision, because she has difficulty seeing things lower in her field of monocular vision. (AR 34-35.)

Plaintiff testified that her diabetes is "borderline" but controlled with medication and that she takes medication for her gout. (AR 31-32.) The gout causes pain in her feet and toes "maybe twice or three times during the month" lasting from one to three days, and the pain is severe enough where she can be bedridden. (AR 32; 36.) Plaintiff will elevate her feet to help with the pain, but states that she does not use heating pads or other methods of pain relief because she "just l[ies] there . . . I can't even cook. I can't go to the bathroom. I can't, nothing." (AR 37.) However, she does not have any trouble sleeping at night because of pain related to her gout or to her eye. (AR 38.)

Plaintiff testified that she had past work "taking care of children" aged infant to about five years old. (AR 28-29.) As part of her childcare, she would pick up the children, "change them," and "keep an eye on them." (AR 29.) The heaviest child she would lift was around 50 or 60 pounds (AR 29), however, she is unable to lift a "big bag of dog food" (AR 32). Plaintiff has no difficulties with sitting but can only stand for a "couple of hours" before having to sit down. (AR 33.) She can walk a block or two blocks at a time. (AR 33.)

//

//

b.     **Vocation Expert Testimony at Hearing**

The Vocation Expert ("VE") testified that Plaintiff had past relevant work as a child monitor, Dictionary of Occupational Titles ("DOT"), 1991 WL 645964, at 301.677-010.  (AR 39.) The occupation of child monitor is generally performed as medium, semi-skilled work with an SVP[3] of 3, however, it was unskilled work as performed by Plaintiff.  (AR 39.)

The ALJ asked the VE to assume a hypothetical worker of the same age, education, and work background of Plaintiff, with no exertional limitations and the following nonexertional limitations:

> . . . vision limitations.  We're talking monocular vision so no task requiring binocular vision.  And also no working at heights or climbing ladders, ropes, or scaffolds.  And also a need to avoid noisy environments.

(AR 40.)   The VE testified that such an individual would be able to perform Plaintiff's past relevant work.  (AR 40.)  The ALJ then modified the hypothetical to "go down to medium and so now we're at 50, 25.  Sit, stand, or walk six to eight."  (AR 40.)  The VE testified that such an individual would be able to perform Plaintiff's past relevant work.  (AR 40.)  The ALJ again modified the hypothetical to "add on to it that this person's going to miss about four days a month."  (AR 40.)   The VE testified that such an individual would not be able to perform Plaintiff's past relevant work or any other work.  (AR 40.)

The ALJ asked whether the VE's testimony was consistent with the DOT.  (AR 40.)  The VE testified that it was consistent.  (AR 40.)

**C.     Administrative Proceedings**

On February 1, 2013, the ALJ issued a written decision and determined Plaintiff was not disabled.  (AR 13-18.)  The ALJ found that Plaintiff had severe impairments including left eye blindness, glaucoma, and right ear hearing loss.  (AR 15.)   The ALJ determined that these impairments did not meet or equal a listed impairment.  (AR 16.)  The ALJ evaluated Plaintiff's alleged impairments of gout, hypertension, diabetes mellitus, and hyperlipidemia, but determined

---

[3]     Specific Vocational Preparation ("SVP"), as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.  DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991).  Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation).  *Id.*

1  these impairments have only minimal, if any, effects on Plaintiff's ability to work. (AR 15.) The

2  ALJ found Plaintiff retained the RFC[4] to perform a full range of work at all exertional levels with

3  the following non-exertional limitations: she "can only work at jobs requiring monocular vision

4  tasks, but not binocular, and cannot climb ladders, ropes, or scaffolds or be around dangerous

5  heights or noisy environments." (AR 16.)

6         Given this RFC, the ALJ found that Plaintiff was able to perform past relevant work as a

7  child monitor, medium unskilled worked as performed and generally performed in the national

8  economy as medium semi-skilled work, DOT 301.677-010. (AR 18.) The ALJ concluded that

9  Plaintiff was not disabled, as defined in sections 216(i), 223(d), and 1614(a)(3)(A) of the Social

10 Security Act. (AR 18.)

11        The Appeals Council denied Plaintiff's request for review on June 13, 2014, making the

12 ALJ's decision the Commissioner's final determination for purposes of judicial review. (AR 2-5.)

13 **D.     Plaintiff's Complaint**

14        On September 12, 2014, Plaintiff filed a complaint before this Court seeking review of the

15 ALJ's decision. (Doc. 1.) Plaintiff argues that the ALJ failed to articulate clear and convincing

16 reasons for finding Plaintiff's statements less than fully credible. (Doc. 14.)

17                              **III.   SCOPE OF REVIEW**

18        The ALJ's decision denying benefits "will be disturbed only if that decision is not

19 supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599,

20 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its

21 judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996).

22 Instead, the Court must determine whether the Commissioner applied the proper legal standards

23 and whether substantial evidence exists in the record to support the Commissioner's findings. *See*

24

---

25 [4]    Residual functional capacity ("RFC") is an assessment of an individual's ability to do sustained work-related
physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week,
26 or an equivalent work schedule. Social Security Ruling ("SSR") 96-8p. The RFC assessment considers only
functional limitations and restrictions that result from an individual's medically determinable impairment or
27 combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in
the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are
reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th
28 Cir. 2006).

1 | *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

2      "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v.*
3 *Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  "Substantial evidence" means "such
4 relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
5 *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*,
6 305 U.S. 197, 229 (1938)).  The Court "must consider the entire record as a whole, weighing both
7 the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and
8 may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v.*
9 *Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

10 | ## IV.   APPLICABLE LAW

11      An individual is considered disabled for purposes of disability benefits if he is unable to
12 engage in any substantial, gainful activity by reason of any medically determinable physical or
13 mental impairment that can be expected to result in death or that has lasted, or can be expected to
14 last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A),
15 1382c(a)(3) (A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003).  The impairment or
16 impairments must result from anatomical, physiological, or psychological abnormalities that are
17 demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of
18 such severity that the claimant is not only unable to do his previous work, but cannot, considering
19 his age, education, and work experience, engage in any other kind of substantial, gainful work that
20 exists in the national economy.  42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

21      The regulations provide that the ALJ must undertake a specific five-step sequential
22 analysis in the process of evaluating a disability.  In Step 1, the ALJ must determine whether the
23 claimant is currently engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(b),
24 416.920(b).  If not, the ALJ must determine at Step 2 whether the claimant has a severe
25 impairment or a combination of impairments significantly limiting her from performing basic
26 work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If so, the ALJ moves to Step 3 and determines
27 whether the claimant has a severe impairment or combination of impairments that meet or equal
28 the requirements of the Listing of Impairments ("Listing"), 20 § 404, Subpart P, App. 1, and is

therefore presumptively disabled.  *Id.* §§ 404.1520(d), 416.920(d).  If not, at Step 4 the ALJ must determine whether the claimant has sufficient RFC despite the impairment or various limitations to perform her past work.  *Id.* §§ 404.1520(f), 416.920(f).  If not, at Step 5, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy.  *Id.* §§ 404.1520(g), 416.920(g).  If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps.  *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## V.   DISCUSSION

Plaintiff contends the ALJ failed to articulate clear and convincing reasons for discounting her statements regarding the severity and extent of her ongoing symptoms.  (Doc. 14, pp. 5-15.)  Plaintiff asserts the ALJ improperly rejected Plaintiff's testimony based on impermissible boilerplate language, a lack of objective medical evidence, a history of conservative medical care, stability on prescribed medications, and daily activities that were "not limited to the ext[e]nt the ALJ expects."  (Doc. 14, pp. 8-9.)  According to Plaintiff, "[n]othing in [her] testimony provides any indication that she is capable of performing anything other than a few basic daily activities and certainly not what is required of substantial gainful work activity[.]"  (Doc. 14, p. 10.)

The Commissioner responds that the ALJ provided valid reasons for finding Plaintiff was not fully credible.  (Doc. 15, pp. 4-9.)  The Commissioner contends the ALJ properly found Plaintiff's statements about the alleged intensity, persistence, and limiting effects of her impairments to be less than fully credible based on the objective medical evidence, Plaintiff's own function report and hearing testimony, and the third-party statements contained within the record.  (Doc. 15, pp. 5-9.)

### 1.   Legal Standard

In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009); *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc).  First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged.  *Vasquez*, 572 F.3d at 591.

1   The claimant is not required to show that his impairment "could reasonably be expected to cause

2   the severity of the symptom [he] has alleged; she need only show that it could reasonably have

3   caused some degree of the symptom." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036).   If the

4   claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the

5   claimant's testimony about the severity of the symptoms if she gives "specific, clear and

6   convincing reasons" for the rejection. *Id.*

7        The ALJ also may consider (1) the claimant's reputation for truthfulness, prior inconsistent

8   statements, or other inconsistent testimony, (2) unexplained or inadequately explained failure to

9   seek treatment or to follow a prescribed course of treatment, and (3) the claimant's daily activities.

10  *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *see also Bray v. Comm'r of Soc. Sec.*

11  *Admin.*, 554 F.3d 1219, 1226-27 (9th Cir. 2009); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir.

12  1996); 20 C.F.R. §§ 404.1529, 416.929.   "If the ALJ's finding is supported by substantial

13  evidence, the court may not engage in second-guessing." *Tommasetti*, 533 F.3d at 1039.

14
           **2.      The ALJ Properly Discounted Plaintiff's Testimony Regarding the Alleged**
15             **Intensity, Persistence, and Limiting Effects of Her Impairments**

16       Having found underlying medically determinable mental impairments, the ALJ moved on

17  to the second step of the two-step analysis to determine the intensity, persistence, and limiting

18  effects of Plaintiff's symptoms to determine the extent to which they actually limit Plaintiff's

19  functioning.  (AR 116-17; *see Vasquez*, 572 F.3d at 591.)  Because the ALJ determined Plaintiff

20  had met the first test and did not find evidence of malingering, the ALJ was required to provide

21  "specific, clear and convincing reasons" for rejecting Plaintiff's subjective testimony about the

22  severity of her symptoms. *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036).

23       Plaintiff argues the ALJ improperly discounted her credibility "because it lacks support in

24  the objective medical evidence."  (Doc. 14, p. 9.)  The Commissioner disagrees, arguing the ALJ

25  properly relied on the objective medical evidence in the record to support his rejection of

26  Plaintiff's testimony on the intensity, persistence, and limiting effects of her medically

27  determinable impairments.  (Doc. 15, pp. 6-7.)  While the inconsistency of objective findings with

28  subjective claims may not be the sole reason for rejecting subjective complaints of pain, *Light v.*

1  *Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997), it is one factor which may be permissibly

2  considered with others, *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *Morgan v. Comm'r*

3  *of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

4         Here, the ALJ reviewed Plaintiff's treatment history.  (AR 16-18.)  The ALJ considered

5  Dr. Rios' consultative internal medicine examination, as well as ophthalmological evaluations by

6  Drs. Kaye and Waters, in determining the limitations imposed by Plaintiff's medically

7  determinable impairments of left eye blindness, glaucoma, and right ear hearing loss.  (AR 17.)

8          . . . In September 2011, Dr. Tomas Rios consultatively examined [Plaintiff] and
   diagnosed glaucoma, partial hearing loss on the right, and hypertension. . . . She
9          was blind in the left eye and 20/25 in the right eye.  The right eye pupil was round
           and reactive to light and accommodation.  Left eye revealed no light reflex and
10         was slightly injected.  [After examination,] Dr. Rios felt [Plaintiff]'s overall
           hearing ability was sufficient without any use of hearing aids.  There was no
11         vertigo elicited, and examination of the left eye also revealed loss of vision, but
           she remained fairly compensated with the right eye.
12

13         . . . Dr. Rios opined [Plaintiff] could lift and carry 50 pounds occasionally and 25
           pounds frequently, sit for six hours, stand and walk for six hours, and should be
14         precluded from working at heights and working around excessive noise.

15  (AR 17.)   The ALJ gave "great weight" to Dr. Rios' opined non-exertional limitation, and

16  incorporated those limitations directly in his RFC, limiting Plaintiff to "only work at jobs

17  requiring monocular vision tasks, but not binocular," and precluding Plaintiff from climbing

18  ladders, ropes, or scaffolds, dangerous heights, and noisy environments.  (AR 16.)   Plaintiff

19  contends that the ALJ impermissibly discredited her testimony "based on a belief that the

20  testimony is not credible because it lacks support in the objective medical evidence."  (Doc. 14, p.

21  9 (citing AR 18 and *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991)).)   Contrary to

22  Plaintiff's contention, however, the lack of objective medical evidence *is* a factor that the ALJ can

23  consider in his credibility analysis.  *Burch*, 400 F.3d at 681; *Orteza v. Shalala*, 50 F.3d 748, 750

24  (9th Cir. 1995); *see also* 20 C.F.R. §§ 404.1529, 416.929(b) (medical evidence must reasonably

25  support subjective claims).

26         Here, the ALJ permissibly described the medical evidence, and noted that nothing in the

27  medical record supported Plaintiff's claims of total disability.  (AR 16-17.)  During the hearing,

28  Plaintiff testified she could not pick up a big bag of dog food but could pick up a 50-60 pound

11

child, that she could only stand for a couple of hours and only walk for a block or two, and complained of disabling foot and toe pain.  (AR 32-33.)  However, radiological imaging of Plaintiff's foot showed no fractures (*see* AR 318), in May of 2012 Plaintiff reported the pain in her foot was gone (*see* AR 312), and on examination, Plaintiff had full muscle strength, normal muscle bulk or tone, and normal gait and range of motion (*see* AR 280-81).  Plaintiff testified that she has trouble seeing out of her right eye, but has no vision problems when she wears her glasses.  (AR 33-34.)  Dr. Rios opined Plaintiff did indeed suffer from hearing loss but was sufficiently able to converse and hear without use of hearing aids, and that her right eye fairly compensated for her left eye blindness.  (AR 280-81.)  Opthamological consultative physician Dr. Kaye evaluated Plaintiff and noted 20/25 visual acuity in her right eye with glasses and Dr. Waters examined Plaintiff and noted 20/20 visual acuity in her right eye.  (*See* AR 17.)  Defendant rightly points out that Plaintiff does not cite any objective medical evidence in the record in support of her alleged limitations (Doc. 15, pp. 6-7) – there is no physician in the medical record who opined that Plaintiff was substantially limited due to her hearing loss, her diagnosed glaucoma, or her left eye blindness.  (*See generally*, AR.)

     While the lack of objective medical evidence supporting Plaintiff's claim cannot form the sole basis for discounting her allegations, it is clearly a factor the ALJ may consider in his credibility analysis.  *See Burch*, 400 F.3d at 681.   Here, the ALJ pointed to substantial medical evidence within the medical record, including observations and notes by examining physicians Drs. Rios, Kaye, and Waters, to support his conclusion that Plaintiff had only nonexertional limitations imposed by her medically determinable impairments, which he then explicitly incorporated into his assessed RFC.  (*See* AR 16-17.)  The ALJ properly pointed to the lack of objective medical evidence in discrediting Plaintiff's testimony.

     Plaintiff also contends the ALJ improperly rejected her subjective testimony because he erroneously believed Plaintiff has only had care that was conservative in nature.  (Doc. 14, p. 11 (citing AR 17 ("[Plaintiff] has not received treatment consistent with her alleged severe symptoms"); *Lapeirre-Gutt v. Astrue*, 382 Fed. Appx. 662, 664 (9th Cir. 2010) ("A claimant cannot be discredited for failing to pursue non-conservative treatment options where none

1  exist")).)  Here, the ALJ specifically noted that Plaintiff's diabetes mellitus and blood pressure are

2  stable on medication (AR 15-16) and that she does not take any medications for her vision

3  problems (AR 17).   (*See also* AR 270 (Plaintiff's glaucoma was stable in May 2011); 352

4  (Plaintiff's gout and hypertension were stable in June 2012).)

5          Contrary to Plaintiff's contention, the ALJ may determine that an "individual's statements

6  [are] less credible if the level or frequency of treatment is inconsistent with the level of

7  complaints."  SSR[5] 96-7p; *see also Burch*, 400 F.3d at 681 (the ALJ "is permitted to consider lack

8  of treatment in his credibility determination"); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th

9  Cir. 2008) (that claimant "did not seek an aggressive treatment plan" and had favorable response

10  to conservative treatment undermine allegations of disabling impairment); *Parra v. Astrue*, 481

11  F.3d 742, 751 (9th Cir. 2007) (where claimant's physical ailments were treated with over-the-

12  counter pain medication, ALJ properly discounted subjective pain testimony).

13          Plaintiff's reliance on *Lapeirre-Gutt* is also misplaced.  In that case, the Ninth Circuit

14  found the ALJ had erred in discrediting the plaintiff's "regimen of powerful pain medications and

15  injections" as "conservative treatment" for her myriad of physical impairments and emphasized

16  that "the record does not reflect that more aggressive treatment options are appropriate or

17  available."  382 Fed. Appx. at 664.  Here, however, Plaintiff has not sought any treatment more

18  aggressive than occasionally using eye drops "when [she] get[s] really bad headaches," some

19  sensitivity to sunlight in her right eye, and using reading glasses.  (AR 30-34.)  Plaintiff had a

20  hearing aid at some point to help with her hearing loss, but since losing it has not replaced it and

21  does not require a replacement to function.  (AR 280-81.)  Plaintiff complains of disabling pain

22  from her headaches but successfully treats it with Ibuprofen.  (AR 31.)  *See Carmickle v. Comm'r*,

23  533 F.3d 1155, 1162 (9th Cir. 2008) (treatment of pain with Ibuprofen is considered a type of

24  "conservative treatment"); *Parra*, 481 F.3d at 751 (successful use of over-the-counter medication

25  to treat symptoms is evidence of conservative treatment sufficient to discount claimant's

26

[5]     Social Security Rulings ("SSR") are final opinions and statements of policy by the Commissioner of Social
27  Security, binding on all components of the Social Security Administration.  20 C.F.R. § 422.406(b)(1).  They are "to
    be relied upon as precedent in determining cases where the facts are basically the same."  *Paulsen v. Bowen*, 836 F.2d
28  1249, 1252 n.2 (9th Cir. 1988).

testimony regarding severity of impairment).

A review of the record reveals that Plaintiff has rarely sought treatment for her allegedly disabling impairments, and that the treatment she did seek has both been conservative in nature and has successfully stabilized her condition.  (*See generally*, AR 17 (Plaintiff's "medications list indicates that [she] was prescribed medications for gout, arthritis, diabetes, cholesterol, high blood pressure, and heart"); 31-32 (testifying her diabetes has remained "borderline" for five years with medication, her blood pressure is "controlled with medication," she treats her gout with Allopurinol, and she treats her pain symptoms with Ibuprofen).)  The ALJ properly pointed to Plaintiff's history of conservative treatment in discrediting her testimony.  Even if the ALJ erred on this basis because Plaintiff's routine medication and use of Ibuprofen constituted "nonconservative care" as Plaintiff contends, any error was harmless given that the ALJ provided other, acceptable reasons for discrediting Plaintiff, as discussed below.  *See Carmickle*, 533 F.3d at 1162-63) (finding error harmless when ALJ cited other reasons to support credibility determination).

Plaintiff finally argues that the ALJ impermissibly discounted her testimony because she described "activities not limited to the ext[e]nt the ALJ expect[ed]."  (Doc. 14, p. 9.)  Plaintiff asserts that "[n]othing in [her] testimony provides any indication that she is capable of performing anything other than a few basic daily activities and certainly not what is required of substantial gainful work activity[.]"  (Doc. 14, p. 10.)  The Commissioner responds that the ALJ properly relied on Plaintiff's own function report and hearing testimony to discount her credibility.  (Doc. 15, pp. 7-8.)  While the mere fact that a claimant engages in certain daily activities does not necessarily detract from her credibility as to overall disability, daily activities support an adverse credibility finding if a claimant is able to spend a substantial part of her day engaged in pursuits involving the performance of physical functions or skills that are transferable to a work setting.  *Orn*, 495 F.3d at 639; *see also Thomas*, 278 F.3d at 959.  A claimant's performance of chores such as preparing meals, cleaning house, doing laundry, shopping, occasional childcare, and interacting with others has been considered sufficient evidence to support an adverse credibility finding when performed for a substantial portion of the day.  *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169,

1175 (9th Cir. 2008); *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005); *Thomas*, 278 F.3d at 959.

Here, the ALJ discussed Plaintiff's hearing testimony, reports to medical sources, and self-assessment. (AR 16-17.) The ALJ noted that Plaintiff

> . . . has described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. She testified that she is blind in her left eye, and light bothers her right eye. However, she also testified that she has a driver's license and drives. She said she has bad headaches twice a month depending on how long she is outside, even though she later testified that light bothers her right eye and [she] does not go outside. She said she takes care of her personal grooming needs, cooks, shops, visits with family, does household chores, and watches television. She stated she can lift and carry 10 pounds, stand for a couple of hours, and walk for one to two blocks, and had no problem sitting. She stated she cannot see at night and uses reading glasses to see with her right eye.

> . . . [However, she also] said she was able to shop, wash dishes, do laundry, sweep, mop, and drive. She told Dr. Rios that she was able to drive a vehicle and was independent in her activities of daily living even though she complained of left-eye blindness.

(AR 16-17; *see also* AR 278.) These activities are inconsistent with the Plaintiff's allegations of severe limitations in her ability to work. (*See, e.g.,* AR 26-28 (Plaintiff is able to drive, take care of her own needs and personal care, cooks, goes shopping, and visits family); AR 30 (testifying that she is blind in her left eye and does not have problems with her right eye, though "it just works harder" as a result of her loss of vision in the left eye); AR 230-31 (Plaintiff is able to climb stairs, wash dishes, wash clothes, sweep, mop, do her own grocery shopping, drive, and carry things without getting tired. She does not have difficulty completing her housework or other chores and there is no difference in the way she does chores as a result of her impairments).

Contrary to Plaintiff's contention, the activities described in Plaintiff's testimony and function report are not "sporadic" and "limited." (*See* Doc. 14, pp. 11-12.) This is not a case where Plaintiff testified she was completely dependent on others for her activities of daily living. During the hearing, Plaintiff testified she retained the ability to handle her personal care and hygiene without help, drive, do household chores, cook, shop, socialize with family, and watch television, and had no difficulty seeing small objects while wearing her reading glasses. (AR 16; 26-27; 34-36.) These types of activities tend to suggest Plaintiff is still capable of performing the

15

1   basic demands of her past relevant work on a sustained basis.  *See, e.g., Stubbs-Danielson*, 539

2   F.3d at 1175 (the ALJ sufficiently explained his reasons for discrediting the claimant's testimony

3   because the record reflected that the claimant performed normal activities of daily living,

4   including cooking, housecleaning, doing laundry, and helping her husband in managing finances –

5   all of which "tend[ed] to suggest that the claimant may still be capable of performing the basic

6   demands of competitive, remunerative, unskilled work on a sustained basis"); *Burch*, 400 F.3d at

7   680 (the ALJ sufficiently explained his reasons for discrediting the claimant's testimony because

8   the record "suggest[ed] that she is quite functional.  She is able to care for her own personal needs,

9   cook, clean and shop.  She interacts with her nephew and her boyfriend"); *see also Valentine v.*

10  *Astrue*, 574 F.3d 685, 694 (9th Cir. 2009) (ALJ properly recognized that daily activities "did not

11  suggest [the claimant] could return to his old job" but "did suggest that [the claimant's] later

12  claims about the severity of his limitations were exaggerated").

13      Here, the ALJ pointed to substantial evidence within the record to support a finding that

14  the breadth of Plaintiff's admitted daily activities and the underlying medical condition established

15  by the medical record were inconsistent with Plaintiff's subjective complaints of disabling

16  functional limitations.  In addition to noting that Plaintiff's admitted activities of daily living and

17  the medical record supported only nonexertional limitations to her ability to perform a full range

18  of work at all exertional levels, the ALJ noted that Plaintiff's daily activities "are not limited to the

19  extent one would expect, given the complaints of disabling symptoms and limitations."  (AR 16.)

20  The ALJ properly relied on the medical record and Plaintiff's own testimony as to her daily

21  activities in discounting Plaintiff's testimony about the extent of her limitations.  *See Bray*, 554

22  F.3d at 1227 (claimant's active lifestyle and work record, among other things, "belie [her] claim of

23  debilitating [ ] illness").

24      While Plaintiff does have some nonexertional limitations imposed by her medically

25  determinable impairments, those impairments are adequately addressed by the assessed RFC

26  limiting her exposure to jobs requiring only monocular tasks and precluding her exposure to

27  climbing, dangerous heights, and noisy environments.  (AR 16; 40 (VE testimony that given these

28  restrictions, an individual would be able to perform Plaintiff's past relevant work).)  The Court is

not tasked with substituting its discretion in the place of that of the ALJ, *Edlund*, 253 F.3d at 1156; *Macri*, 93 F.3d at 534; where "the ALJ's credibility finding is supported by substantial evidence in the record, [the Court] may not engage in second-guessing[,]" *Thomas*, 278 F.3d at 959. The ALJ articulated clear and convincing reasons for rejecting Plaintiff's subjective complaints, and permissibly discounted her credibility. *Cf. Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

In sum, the ALJ's reasons were properly supported by the record and sufficiently specific to allow the Court to conclude that he rejected Plaintiff's testimony on permissible grounds, and did not arbitrarily discredit Plaintiff's testimony.

### CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Carolyn W. Colvin, Acting Commissioner of Social Security, and against Plaintiff Rosemarie Ramos Rios.

IT IS SO ORDERED.

Dated:   __January 21, 2016__                           _____ /s/ Sheila K. Oberto
                                                        UNITED STATES MAGISTRATE JUDGE